IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VALTRUS INNOVATIONS LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 3:22-CV-00066-N |
| GOOGLE LLC, | |
| Defendant. | |

**DEFENDANT GOOGLE LLC'S OPPOSITION TO MOTION TO LIFT STAY PENDING _INTER PARTES_ REVIEW**

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

BACKGROUND ........................................................................................................3

I.    Valtrus's Complaint and Current Status of Asserted Patents ...............................3

II.    November 22, 2022 Order Granting Stay ..........................................................4

III.   Motions Pending Before the Stay and Significant Remaining Discovery ..........6

IV.   The Parties' Meet and Confer Regarding the Stay .............................................7

LEGAL STANDARD ...............................................................................................9

ARGUMENT .............................................................................................................9

I.    Valtrus Provides No Authority or Basis to Dismiss the '764, '005 and '454 Patents
..................................................................................................................................9

II.    The Factors All Favor Continuation of The Stay ..............................................12

     A.    There Is No Undue Prejudice that Warrants Lifting Stay .....................13

          1.    *Valtrus will not be unduly prejudiced.* ......................................13

          2.    *Valtrus shows no legitimate concern regarding loss of evidence.* .............14

     B.    The Stay Will Continue to Simplify And Streamline The Issues And Reduce The Burden Of Litigation On The Court And The Parties ...................................17

          1.    *The Stay Pending Appeals Has And Will Continue To Streamline The Issues* ...................17

          2.    *Google's Ex Parte Reexamination Will Further Narrow The Issues* ........20

     C.    The Litigation Remains In Its Early Stages .........................................21

     D.    Valtrus's Cases Do Not Support Lifting the Stay. ...............................22

III.   Keeping the Stay in Place Is Appropriate Even Were the '764, '005, and '454 Patents Dismissed with Prejudice ......................................................................25

CONCLUSION.......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

### <u>Cases</u>

*Acqis, LLC v. EMC Corp.,*
No. 14-cv-13560, 2016 WL 4250245 (D. Mass. Aug. 10, 2016) .........................................24

*Alvarez v. Aldi (Texas) LLC,*
No. 3:13-CV-4122-L, 2014 WL 3557435 (N.D. Tex. July 17, 2014)...........................11, 25

*Baxter Healthcare Corp. v. Becton, Dickinson and Co.,*
No. 3:17-CV-2186 JLS-RBB, 2021 WL 22553, at *3 (S.D. Cal. Jan. 4, 2021) ..............17, 19

*Blephex LLC v. Pain Point Med. Sys. Inc,*
No. 3:16-CV-0410-N, 2016 WL 7839343 (N.D. Tex. Nov. 3, 2016) .............5, 9, 13, 14, 21

*Canon Inc. v. Avigilon USA Corp.,*
No. 3:17-cv-2733, Dkt. 88 (N.D. Tex. June 10, 2019) .........................................................23

*Cavazos v. JP Morgan Chase Bank Nat'l Ass'n,*
388 F. App'x 398 (5th Cir. 2010) ..................................................................................11, 25

*Cellwitch Inc. v. Tile, Inc.,*
No. 19-CV-01315-JSW, 2021 WL 9145413 (N.D. Cal. Oct. 8, 2021) .........13, 17, 18, 19, 23

*Clinicomp Int'l, Inc. v. Cerner Corp.,*
No. 17-CV2479-GPC-BLM, 2018 WL 5617694 (S.D. Cal. Oct. 30, 2018).......................13

*In re Corel Software LLC,*
778 F. App'x 951 (Fed. Cir. 2019) ..............................................................................20, 21

*CUPP Cybersecurity LLC v. Trend Micro, Inc.,*
No. 3:18-cv-1251, Dkt. 73 (N.D. Tex. Oct. 5, 2020).........................................................23

*DivX, LLC v. Netflix, Inc.,*
No. CV191602PSGDFMX, 2022 WL 1208167 (C.D. Cal. Mar. 29, 2022).......14, 17, 18, 19

*DSS Tech. Mgt., Inc. v. Apple, Inc.,*
No. 14-CV-05330-HSG, 2015 WL 1967878 (N.D. Cal. May 1, 2015) ................................5

*Exxon Corp. v. Maryland Cas. Co.,*
599 F.2d 659 (5th Cir. 1979) .............................................................................................10

ii

*Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*,
No. 6:18-CV-00407, Dkt. 164 (E.D. Tex. Oct. 20, 2022) .......................................................24

*Gould v. Control Laser Corp.*,
705 F.2d 1340 (Fed. Cir. 1983) ........................................................................................4

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
No. 3:13-cv-4987, Dkt. 106 (N.D. Tex. July 11, 2016) .......................................................23

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
No. 18-452, 2020 WL 6270776 (D. Del. Oct. 26, 2020) .....................................................22

*Leeuw v. Kroger Texas, L.P.*,
No. 3:19-CV-1771-L, 2021 WL 4295405 (N.D. Tex. Sept. 21, 2021) ...............................10

*Masimo Corp. v. Apple Inc.*,
No. SACV2000048JVSJDEX, 2024 WL 751008 (C.D. Cal. Feb. 16, 2024).....................2, 17

*Medtronic, Inc. v. Axonics Modulation Techs., Inc.*,
No. SA CV-02115, 2021 WL 6618872 (C.D. Cal. Oct. 21, 2021) .......................................25

*Micrografx, LLC v. Google, Inc.*,
No. 3:13-CV-3595-N, 2014 WL 12580455 (N.D. Tex. July 9, 2014)..................................13

*Morales v. Gomez*,
No. EP-14-CV-00189-DCG, 2014 WL 12889930 (W.D. Tex. Nov. 24, 2014).................11

*Murata Mach. USA v. Daifuku Co., Ltd.*,
830 F.3d 1357 (Fed. Cir. 2016) ........................................................................................9

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
53 F.4th 869 (5th Cir. 2022).............................................................................................10

*Oyster Optics, LLC v. Ciena Corp. et al.*,
No. 4:20-CV-02354, Dkt. 84 (N.D. Cal. Nov. 1, 2021) .....................................................24

*Papst Licensing GmbH & Co., KG v. Apple, Inc.*,
No. 6:15-CV-01095, 2018 WL 3656491 (E.D. Tex. Aug. 1, 2018).....................................24

*Parallax Grp. Int'l, LLC v. Incstores LLC*,
No. SACV1600929JVSDFMX, 2021 WL 3508231 (C.D. Cal. May 12, 2021).......17, 18, 19

iii

*Petrus v. Bowen,*
833 F.2d 581 (5th Cir. 1987) ...................................................................................9

*Polaris Powerled Techs., LLC v. Dell Techs. Inc.,*
No. 1:22-CV-0973-RP, 2023 WL 5282381 (W.D. Tex. Aug. 15, 2023) ...........................20

*Realtime Data LLC v. Silver Peak Sys., Inc.,*
No. 17-CV-02373-PJH, 2018 WL 3744223 (N.D. Cal. Aug. 7, 2018) .................17, 18

*Robert Bosch Healthcare Sys., Inc. v. Cardiocom LLC,*
No. 14-cv-01575-EMC, 2017 WL 6939167 (N.D. Cal. Mar. 16, 2017) ...........................18

*Sorensen, Sorensen ex rel. Sorensen Rsch. & Dev. Tr. v. Black & Decker Corp.,*
2007 WL 2696590 (S.D. Cal. Sept. 10, 2007) ..............................................14

*Uniloc 2017 LLC v. LG Elecs. U.S.A., Inc.,*
No. 3:18-CV-3071-N, 2020 WL 374545 (N.D. Tex. Jan. 23, 2020) ..................9

*Valtrus Innovations, Ltd. v. Micro Focus Software, Inc.,*
No. 2:22-mc-399, Dkt. 1-9 (D. Utah June 19, 2023) ....................................16, 17

*Williams v. Seidenbach,*
958 F.3d 341 (5th Cir. 2020) (en banc) ...................................................10

*Zipit Wireless Inc. v. Blackberry Ltd.,*
No. 6:13-cv-02959, 2016 WL 3452735 (D.S.C. June 24, 2016) ..........................24

*ZitoVault, LLC v. Int'l Bus. Mach. Corp.,*
No. 3:16-cv-0962, Dkt. 65 (N.D. Tex. May 10 2017) ....................................23

## Statutes

35 U.S.C. § 101 ...................................................................................6

35 U.S.C. § 301. ...................................................................................4

35 U.S.C. § 303 ...................................................................................4

35 U.S.C. § 303(a) ...................................................................................4

35 U.S.C. § 304 ...................................................................................4

## NOTE ON CITATIONS

- References to Plaintiff Valtrus Innovations Ltd.'s Opposed Motion to Lift the Stay Pending *Inter Partes* Review, Dkt. 182-2, are indicated by "Br."

- References to the Final Written Decision in IPR2022-01545, which relates to U.S. Patent No. 6,728,704, are designated by "'704 FWD". *See* Dkt. 182-3, Ex. 3.

- The patents-in-suit, U.S. Patent Nos. 6,728,704 ("the '704 patent"), 6,738,764 ("the '764 patent"), 6,816,809 ("the '809 patent"), 7,346,604 ("the '604 patent"), 7,523,454 ("the '454 patent"), and 7,748,005 ("the '005 patent") (collectively, the "Asserted Patents") were attached as Exhibits 1-6 of the Complaint.  References to the patents-in-suit are indicated by column and line number, or by claim number.

- All emphases are added unless otherwise noted.

In November 2022, the Court granted Google's Motion to Stay Pending Inter Partes Review (Dkt. 141) and stayed the case "pending final resolution of the inter partes review." Dkt. 179. The inter partes review has not been "finally resolved." The PTAB found all claims of the '764, '005 and '454 patents unpatentable. And while the PTAB found the challenged claims of the '704 patent were not unpatentable, as Valtrus acknowledges, Google intends to appeal the PTAB's rulings as to the '704 patent. Valtrus's Motion makes no representation that it will not appeal the rulings on the '764, '005, and '454 patents. There is no final resolution here.

Nevertheless, Valtrus seeks to lift the stay because it is "willing" to dismiss the '764, '005, and '454 patents. And while Valtrus is vague in its Motion about whether it is seeking this Court to dismiss these three patents with or without prejudice, its proposed order makes clear that it is asking the Court to dismiss these three patents without prejudice. It thus appears that Valtrus may seek to appeal the IPR rulings and then re-assert these patents again later if their appeals are successful. This is exactly the type of inefficiency that stays pending IPR are meant to prevent. In any event, as Google pointed out to Valtrus before Valtrus filed its Motion, Google is not aware of any rule or legal authority that would allow Valtrus to unilaterally obtain dismissal of its claims as to these patents only, as opposed to the entire case, such as under Fed. R. Civ. P. 41(a). Indeed, Valtrus does not even try to support this request with any rule or legal authority. Valtrus's incorrect threshold assumption that the '764, '005, and '454 patents will be dismissed alone shows Valtrus's Motion should be denied because Valtrus does not even try to argue the stay should be lifted absent the dismissal of these patents.

Moreover, even were the dismissal of the '005, '454, and '764 patents without prejudice somehow proper, all pertinent factors continue to weigh in favor of a stay. Valtrus will not suffer undue prejudice during the continued stay. Valtrus is a nonpracticing entity, so any delay

associated with the IPR proceedings can be adequately compensated by monetary means, as the Court already found.  All but one of the Asserted Patents have expired and the PTAB has already found that single unexpired patent unpatentable, further diminishing any potential prejudice to Valtrus.  And the concerns Valtrus raises now regarding potential loss of evidence from a stay are the same concerns that it raised in 2022, which the Court rejected when granting the stay.  Dkt. 179, 3 (finding that "the risk of losing evidence is minimal.")

In contrast, dismissing these claims without prejudice and continuing this case would only increase the likelihood of the inefficiencies the Court found a stay would avoid.  As noted above, Valtrus has left the door open to it appealing the '005, '454, and '764 patents and to later assert these same patents against Google in a separate case (and potentially in a different court) should Valtrus succeed on any of these appeals.  This could result in multiple trials on multiple timelines with duplicative discovery (including on overlapping accused products in Google Search and Google Cloud), claim construction, and dispositive motions, which would be extremely burdensome to both the parties and the Court.

Moreover, should the Federal Circuit agree with Google and reverse the PTAB's ruling on the '704 patent, the Court and the parties would not need to address those claims at all in the litigation.  Further, the Federal Circuit's rulings may resolve claim construction issues currently pending before this Court.  *E.g.*, *Masimo Corp. v. Apple Inc.*, No. SACV2000048JVSJDEX, 2024 WL 751008, at *2 (C.D. Cal. Feb. 16, 2024) ("[W]aiting for the Federal Circuit to reach a final resolution of Defendant's appeal would continue to have significant efficiency benefits.").  Google has also filed an ex parte reexamination as to the asserted '809 patent, which could further narrow, or eliminate, the issues as to that patent as well.  Notably, these benefits of a continued stay would exist even if the '005, '454, and '764 patents are dismissed with prejudice.

Finally, as the Court already found, this case is in its early stages—there is no trial date set, no dispositive motions heard, no Markman hearing scheduled, and only limited discovery has been conducted.

Valtrus's Motion should be denied.

## BACKGROUND

### I.    Valtrus's Complaint and Current Status of Asserted Patents

Valtrus is a nonpracticing entity that does not make or sell any products.  Valtrus filed its Complaint against Google in January 2022, alleging that Google infringes six patents that Valtrus had recently acquired.  Dkt. 1.  Valtrus's infringement allegations concerning the '704 patent, the '764 patent, and the '604 patent generally concern Google Search.  Valtrus's infringement allegations concerning the '809 patent, the '454 patent, and the '005 patent generally concern Google Cloud.

Google filed six IPR petitions directed to five of the six asserted patents (the '764, '005, '454, '704, and '809 patents) on the basis that the patent claims at issue in those IPRs are invalid as anticipated and/or obvious in light of prior art and printed publications. The PTAB found all claims of the '764, '005 and '454 patents unpatentable.   The PTAB found all claims of the '704 patent not unpatentable.  Dkt. 182-3, Ex. 3.  The PTAB did not institute Google's IPR challenges against the '809 patent.  Dkt. 182-3, Ex. 2.  While Valtrus says it is willing to dismiss (but only without prejudice) the '764, '005 and '454 patents found to be unpatentable by the PTAB, all are still in the case.  And Valtrus is silent as to whether it intends to appeal these IPR decisions and reassert those patents against Google later.

Valtrus's argument that "no further PTAB proceedings or appeals are available to Google against" the '809 patent ignores the pending request for *ex parte* reexamination in front of the USPTO for this patent.  Br. 9-10.  While "PTAB" proceedings may not be available to Google via

an IPR, as Valtrus knows but does not disclose in its Motion, on February 21, 2024, Google filed a request for *ex parte* reexamination of the '809 patent with the USPTO.[1]  Ex. A-1, App. 8-151.[2] Google's *ex parte* reexamination challenges all of the claims in the '809 patent and asserts that the claims are invalid based on different grounds than those in the IPR.  *Id.*  The USPTO will issue the decision on the request for *ex parte* reexamination by May 21, 2024.  Ex. A-2, App. 153.

The '604 patent and '005 patent expired in 2021.  The '704 patent, '764 patent, and '809 patents all expired in 2022.  The '454 patent expires on April 6, 2026, but the PTAB has already found that patent unpatentable.

II.  **November 22, 2022 Order Granting Stay**

After filing its IPRs between July and September 2022, Google moved to stay the case pending resolution of the *inter partes* review proceedings, including any appeals thereafter.  Dkt. 141, 1 ("Google respectfully moves the Court to stay this case during the pendency of the IPR proceedings (including any appeals thereafter).").  The Court granted Google's Motion to Stay on November 2, 2022, finding that all three *Uniloc* factors favored a stay.  Dkt. 179, 4 ("Because each

---

[1]  An *ex parte* reexamination is an administrative process that can be initiated by a third-party requestor but only the PTO and the patent owner are involved after the proceeding is commenced. 35 U.S.C. § 301, *et seq*.  The Federal Circuit explained that Congress designed the *ex parte* reexamination procedure to be a "useful and necessary alternative for challengers" to "test the validity of . . . patents in an efficient and relatively inexpensive manner."  *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (quoting legislative history).  After receiving a request for *ex parte* reexamination, the PTO has three months to determine whether the request poses a "substantial new question of patentability," as per 35 U.S.C. § 303(a).  If there is a substantial new question of patentability, the PTO grants the request and commences the *ex parte* review proceeding.  35 U.S.C. §§ 303–304.  The decision commencing the *ex parte* reexamination sets forth a deadline for issuing the First Office Action, typically within 5 months, that may reject the claims.  The patent owner has 30 days to respond to the First Office Action.  37 C.F.R. § 1.550. The pendency of the *ex parte* reexamination is on average 25.2 months from the filing of the request to the PTO's issuance of a reexamination certificate.  *See* PTO Ex Parte Reexamination Filing Data, Sept. 30, 2023, at 2, https://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_.pdf.

[2]  All exhibits are attached to the declaration of Michael Trombetta submitted herewith.

of the three factors supports granting the stay, the Court grants Google's motion and stays the case pending resolution of the IPR.").

First, the Court found that a stay would not unduly prejudice or present a tactical disadvantage to Valtrus. As the Court found, "Valtrus does not practice the asserted patents, does not compete with Google, and has not moved for a preliminary injunction. Therefore, any delay in recovery can be compensated by monetary damages." *Id.*, 2. The Court further found "[t]he fact that the events in question happened years ago does not automatically warrant parallel and duplicative proceedings to avoid loss of evidence." *Id.*, 3. As the Court noted, a document hold is in place and would remain in place during the stay so the risk of losing evidence is minimal. *Id.* And "[t]he inconvenience of a delay is outweighed by the benefit of potentially limiting the documents that the third parties will be required to produce." *Id.*

Second, the Court further found that a stay would simplify the issues in the case "by, for example, 'rendering some or all of Plaintiff's infringement claims moot, estopping Defendant from asserting any arguments it raised or reasonably could have raised in the IPR, and providing the Court with PTAB's expert opinion on the claims at issue.'" *Id.* (citing *Blephex LLC v. Pain Point Med. Sys. Inc*, No. 3:16-CV-0410-N, 2016 WL 7839343, at *2 (N.D. Tex. Nov. 3, 2016) (quoting *DSS Tech. Mgt., Inc. v. Apple, Inc.*, No. 14-CV-05330-HSG, 2015 WL 1967878, at *3 (N.D. Cal. May 1, 2015)).

Finally, the Court found that the status of the case weighed in favor of a stay: "This case has not yet been set for trial, and there are no dates for the close of fact and expert discovery. Moreover, the Court has not ruled on any dispositive motions, and the Court has not rendered a decision on claim construction. Based on the status of the case, the Court finds that this factor weighs in favor of granting the stay." Dkt. 179, 4. All this remains true.

### III.   **Motions Pending Before the Stay and Significant Remaining Discovery**

On March 21, 2022, Google moved to dismiss Valtrus's Complaint as to the '704, '604, '764, and '809 patents on the ground that they are not directed to patentable subject matter under 35 U.S.C. § 101, and that Valtrus failed to sufficiently plead that Google infringes the '809 patent. Dkt. 22.  Google's Motion to Dismiss is fully briefed and pending a decision from this Court.[3]

Google's Motion to Strike Valtrus's Proposed Claim Terms (Dkt. 87) is also pending. Valtrus's preliminary infringement contentions identified an additional forty-six dependent claims, some with multiple additional elements and limitations, for which it provided *no* infringement contentions.  Dkt. 87, 2-3.  These "Set B" Claims include '704 patent, claims 3-6, 14-17; '764 patent, claims 4-6, 11-13, 17-19; '604 patent, claims 4-19; '809 patent, claims 4, 7-8, 10-12, 15-17, 20; '454 patent, claim 21; and '005 patent, claims 11 and 14.

As discussed in Google's Reply in Support of its Motion to Strike, Valtrus served what it called "supplemental infringement contentions" on July 31, purportedly under Miscellaneous Order No. 62 ¶ 3-7(a)(1).  Dkt. 111, 7-10.  These supplemental contentions are improper and deficient, so Google filed a motion to strike these supplemental contentions.  Dkt. 117.  Valtrus then improperly served *further* revised supplemental infringement contentions on September 15, 2022 and again on February 15, 2023 after the stay, potentially requiring further motion practice as to them.

Further, as noted in Google's Motion to Stay, discovery has begun but is still at an early stage.  Neither party has identified email custodians, and non-email documents were still being produced on a rolling basis.  Notably, Valtrus initially committed to "substantially complete" its

---

[3] Further briefing will also likely be appropriate as to both Google's Motion to Dismiss on § 101, and claim construction, to address Valtrus's arguments in the IPRs.

document production by July 29, 2022 (Dkt. 101, Ex. 5, App. 116), and then stated it would

"substantially complete" its non-damages-related and non-ESI production by September 30.  Dkt.

114, 6.  Then, on November 1, the day before the stay, Valtrus stated "Valtrus' investigation for

non-privileged, non-work product protected documents within its possession, custody, or control

remains ongoing."  Ex. A-3, App. 156 (Nov. 1, 2022 Ltr from Valtrus to Google).  Further, Valtrus

has only deposed five Google employees thus far.  And discovery related to damages and any

alleged willfulness is currently stayed pursuant to the Scheduling Order and would not commence

until 30 and 50 days from the date the Court's claim construction ruling is filed, respectively.  Dkt.

51.

## IV.   **The Parties' Meet and Confer Regarding the Stay**

On Thursday April 11, 2024, Valtrus indicated it intended to move to lift the stay and asked

for Google's position and a meet and confer the next day.  Dkt. 182-3, Ex. 1, App. 3-4.  Google

responded on Monday April 15, noting that the Court's stay order explicitly states that "the Court

grants the motion and stays the case pending final resolution of the *inter partes* review," and asked

for Valtrus's basis for lifting the stay given that any appeals on the IPRs have not been completed.

Ex. A-4, App. 161.  Google also inquired whether Valtrus had decided whether to appeal the

invalidated patents, and if so, what it intended to do.  *Id.*

Valtrus simply concluded that "pending resolution of the IPR" in the Court's Order only

referred to "resolution" of the proceedings before the PTAB.  *Id.*, App. 160.  It further stated that

it "intends to dismiss without prejudice its claims relating to the '005, '454, and '764 patents, and

proceed only on the remaining three patents," but did not answer Google's question about whether

Valtrus intended to appeal the adverse decisions.  *Id.*  Given that Valtrus did not explain how or

when it "intend[ed]" to dismiss the claims without prejudice, Google asked for clarification, noting

it was aware of no mechanism in the Federal Rules of Civil Procedure that permits Valtrus to dismiss a subset of claims in this action without prejudice without Google's consent. *Id.* And Google again asked whether Valtrus intended to appeal the invalidity findings in the IPRs for the '005, '454, and '764 patents. *Id.*

Valtrus declined to provide further details in writing and the parties met and conferred on April 17. Google reiterated that with appeals pending, the final resolution of the IPRs has not yet occurred, and so the stay should remain in place. *Id.*, App. 160-161; Dkt. 182-3, Ex. 1, App. 2-3. But the primary reason that Valtrus believed the stay should be lifted was that it intends to seek to have the invalidated '005, '454, and '764 patents dismissed without prejudice. Ex. A-4, App. 160-161; Dkt. 182-3, Ex. 1, App. 2-3. Google again asked what basis or rule would allow Valtrus do this. Dkt. 182-3, Ex. 1, App. 2-3. Valtrus could not identify any. *Id.*, App. 1-2. Google further noted that dismissing without prejudice, even if somehow permitted, would just increase the likelihood of the inefficiencies the Court found a stay would avoid, given Valtrus was trying to leave the door open to appeal the '005, '454, and '764 patents and to later assert these same patents against Google should it succeed. *Id.*, App. 2-3. Google also pointed out that Valtrus's indecision on whether to appeal the '005, '454, and '764 patents' invalidation also made Valtrus's then-planned motion, at a minimum, premature. *Id.*

Contrary to Valtrus's suggestion to the Court, Valtrus did not simply offer to "dismiss with prejudice the '764, '005, and '654 patents" in response. Br. 1. Rather, Valtrus provided a Rule 408 settlement offer: Valtrus would dismiss the '005, '454, and '764 patents with prejudice and Google would not "oppose a motion to lift the stay" as to the '704, '604 and '809 patents. Dkt. 182-3, Ex. 1, App. 2. Google responded that "Google intends to appeal the PTAB's ruling on the '704 patent and does not agree to lift the stay while that appeal is pending, including for reasons

previously articulated." *Id.* But Google indicated it would not oppose a motion lifting the stay if Valtrus would dismiss the '005, '454,'764 patents, and also the '704 patent, with prejudice. *Id.*, App. 1. Thus, Valtrus's characterization of Google's response to this settlement offer (to the extent relevant at all) as "not a serious position" (Br. 1) is misleading as it omits the explanation for why Google sought dismissal of the '704 patent from the case. Valtrus did not respond further before filing this Motion.

## LEGAL STANDARD

As the Fifth Circuit and this Court have previously recognized, district courts have "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987); *Uniloc 2017 LLC v. LG Elecs. U.S.A., Inc.*, No. 3:18-CV-3071-N, 2020 WL 374545, at *1 (N.D. Tex. Jan. 23, 2020). As this Court previously found, whether it is appropriate to stay litigation pending examination by the PTAB, courts generally consider "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmovant; (2) whether a stay will simplify the issues in the case and the trial; and (3) whether discovery is complete and whether a trial date has been set." Dkt. 179, 2 (quoting *Uniloc*, 2020 WL 374545, at *1 (citing *Murata Mach. USA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016)). As the Court also noted, the "Court may also consider whether a stay would reduce the burden of litigation." Dkt. 179, 2 (citing *Blephex*, 2016 WL 7839343, at *1).

As Valtrus notes (Br. 4), Courts have generally found that the factors to consider in lifting a stay pending IPR are the same as deciding whether to stay pending litigation.

**ARGUMENT**

**I.**     **Valtrus Provides No Authority or Basis to Dismiss the '764, '005 and '454 Patents**

Valtrus's Motion is based on the assumption that the '764, '005 and '454 patents are or will be no longer in this case. It makes no argument that it is appropriate to lift the stay in this case if these patents are not dismissed. This is unsurprising as it would make no sense to proceed with the '764, '005 and '454 patents in the litigation that have been found to be invalid by the PTAB, while Valtrus appeals those rulings. Even Valtrus appears to recognize this as it presents no argument at all for lifting the stay if the patents invalidated by the PTAB remain in the case.

Yet, Valtrus does not even *discuss* the dismissal of these patents in its Motion other than to request it, purport to summarize the parties' communications regarding dismissal, including Rule 408 communications, and say it is "willing" to dismiss these patents. Br. 1, 3, 9. Valtrus provides no rule or basis as to how or why its claims as to the '764, '005, and '454 patents should be dismissed as it requests. This is likely because, as Google pointed out to Valtrus before it filed its Motion, there is no basis for Valtrus to do so. Ex. A-4, 160-161. For example, this Court cannot dismiss only Valtrus's claims as to these three patents under Rule 41(a)(1) or Rule 41(a)(2), because Rule 41(a) requires dismissal of "an action," not dismissal of single claims. *E.g., Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 878 n.15 (5th Cir. 2022) (judgment purporting to dismiss a single claim under Rule 41(a) is "invalid"); *Williams v. Seidenbach*, 958 F.3d 341, 345 (5th Cir. 2020) (en banc) (although Rule 41(a) may be used dismiss a single defendant, Rule 41(a) dismissals of "individual claims" are "impermissible"); *Exxon Corp. v. Maryland Cas. Co.,* 599 F.2d 659, 662-63 (5th Cir. 1979) ("[W]hen Rule 41(a) refers to Dismissal of an 'action,' there is no reason to suppose that the term is intended to include the separate claims which make up an action. . . . Exxon had no power unilaterally to withdraw the second claim from its complaint, and the second claim is still pending in district court."); *Leeuw*

10

*v. Kroger Texas, L.P.*, No. 3:19-CV-1771-L, 2021 WL 4295405, at *3 (N.D. Tex. Sept. 21, 2021) ("By its own terms, however, Rule 41 contemplates "Dismissal of Actions," not dismissal of only particular claims."); *Morales v. Gomez*, No. EP-14-CV-00189-DCG, 2014 WL 12889930, at *1 (W.D. Tex. Nov. 24, 2014) ("Federal Rule of Civil Procedure 41(a)(2) states that '[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiffs request only by court order, on terms that the court considers proper.' Fed. R. Civ. P. 41(a)(2). . . . Rule 41(a) governs dismissal of entire actions, not of individual claims.")[4]

While Valtrus presents no rule or basis for dismissal at all, dismissing the '764, '005 and '454 patents ***without prejudice*** (as Valtrus seeks to do) and still continuing with the remaining patents in this case would create the same type of prejudice and inefficiency, including the possibility of multiple trials on multiple timelines with duplicative discovery, claim construction, and dispositive motions, burdening both the parties and the Court, that warranted a stay in the first instance. As Google pointed out in its Motion to Stay, Valtrus alleges that Google Search infringes three of the remaining asserted patents—the '764, '604, and '704 patents. Because the accused functionalities of Google Search largely overlap across the three asserted patents that Valtrus alleges read on Google Search (*see* Dkt. 117, 7-8), it makes no sense to permit Valtrus to proceed with the '704 patent and '604 patent accusing Google Search in this litigation (whether stayed or not) only to allow Valtrus to potentially file an entirely different litigation also accusing Google Search regarding the '764 patent later should it succeed in its appeal regarding that patent. Nor

---

[4] Any attempt by Valtrus to raise some other basis for dismissal, with or without prejudice, in its reply after not doing so in its Motion should be rejected out of hand. *Cavazos v. JP Morgan Chase Bank Nat'l Ass'n*, 388 F. App'x 398, 399 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief . . . are waived"); *see also Alvarez v. Aldi (Texas) LLC*, No. 3:13-CV-4122-L, 2014 WL 3557435, at *2 (N.D. Tex. July 17, 2014) ("[A]rguments should not be made for the first time in a reply.").

does it make sense to proceed with the '809 patent now accusing Google Cloud, when Valtrus may seek to file another litigation regarding the '454 patent and '005 patent also accusing Google Cloud should it succeed with those appeals.

*Neodron, LTD. v. Lenovo Grp., LTD.* is instructive.  No. 19-CV-05644-SI, 2020 WL 6585797 (N.D. Cal. Nov. 10, 2020).  In *Neodron*, the plaintiff asserted six patents; three patents were in various stages of IPR, and three patents were not.  *Id.* at *2.  So plaintiff moved to lift the stay to proceed only with respect to the patents not subject to IPR, while electing not to pursue the other three patents subject to IPRs in the case.  *Id.*  Like Valtrus, the *Neodron* plaintiff sought dismissal of the three patents subject to IPR without prejudice.  The court denied plaintiff's motion to lift the stay, noting that proceeding with patents not subject to IPR "without the dismissal, ***with prejudice***, of the claims involving the patents pending IPR would allow [the plaintiff] to later assert those claims at a later stage of litigation or in a new proceeding."  *Id.*  ("[T]here would be no simplification if Neodron were to elect to proceed with patents '286, '237, and '770 because granting Neodron's motion would potentially delay litigation or introduce new issues in question at a later stage of litigation.").  Valtrus's request to dismiss the '764, '604, and '704 patents without prejudice, under whatever rule, is improper and should be rejected for the same reasons.[5]

## II.      The Factors All Favor Continuation of The Stay

Given the flawed assumption of its requested dismissal without prejudice of the '764, '005, and '454 patents dooms Valtrus's Motion, the Court need not even address the stay factors.

But, in any event, all three factors weigh in favor of a continued stay.  And despite Valtrus's assertions regarding the supposed routine nature of its request to lift the stay, as detailed herein,

---

[5] Even were the '764, '005, and '454 patents dismissed with prejudice, which Valtrus does not ask for in its Motion, the factors would still support keeping the stay in place as discussed below. *Infra*, §§ II(A)(1); II(D).

the weight of authority demonstrates that on the facts **here**, the appropriate inquiry, the factors do not favor lifting the stay.

### A.      There Is No Undue Prejudice that Warrants Lifting Stay

#### 1.      *Valtrus will not be unduly prejudiced.*

The Court previously found that a stay would not unduly prejudice or present a tactical disadvantage to Valtrus: "Valtrus does not practice the asserted patents, does not compete with Google, and has not moved for a preliminary injunction. Therefore, any delay in recovery can be compensated by monetary damages."  Dkt. 179, 2; *Blephex*, 2016 WL 7839343, at *1 ("[A] stay will not diminish the monetary damages to which [the plaintiff] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages and delays any potential injunctive remedy."); *see also* Dkt. 141, 6-9 (Google's Motion to Stay collecting cases); *Cellwitch Inc. v. Tile, Inc.*, No. 19-CV-01315-JSW, 2021 WL 9145413, at *4 (N.D. Cal. Oct. 8, 2021) (denying motion to lift stay, finding "the lack of competition" between the parties "decreases the potential prejudice [the plaintiff] might suffer from a continued stay.").

Indeed, now the '764, '704, '809, '604, and '005 patents have all expired.  The only Asserted Patent that has not expired, the '454 patent, was found unpatentable, and Valtrus does not seek to, at least presently, pursue its claims as to it, further diminishing any potential prejudice to Valtrus.  *Micrografx, LLC v. Google, Inc.*, No. 3:13-CV-3595-N, 2014 WL 12580455, at *1 (N.D. Tex. July 9, 2014) ("Micrografx's right to monetary damages for the period of infringement will not be affected by the expiration of the patent.  Thus, a stay will not unduly prejudice Micrografx."); *accord Clinicomp Int'l, Inc. v. Cerner Corp.*, No. 17-CV2479-GPC-BLM, 2018 WL 5617694, at *5 (S.D. Cal. Oct. 30, 2018) ("When a patent has expired and only monetary damages remain, there is no undue prejudice because the plaintiff will eventually be able to seek recovery.").  That all the patents Valtrus seeks to pursue at this time have been expired since at

least 2022, shows any prejudice from a delay is minor relative to the delays in the patentee (including Valtrus's predecessors in interest) litigating this case in the first place. *E.g.*, *Sorensen*, *Sorensen ex rel. Sorensen Rsch. & Dev. Tr. v. Black & Decker Corp.,* 2007 WL 2696590, at \*4 (S.D. Cal. Sept. 10, 2007) (holding that delay was not unduly prejudicial to a plaintiff when the plaintiff delayed pursuing the litigation).  And it is well settled, as this Court has also found, that "a delay caused by the *inter partes* review process, without more, does not justify denial of a stay." *Blephex*, 2016 WL 7839343, at \*2; *DivX, LLC v. Netflix, Inc.*, No. CV191602PSGDFMX, 2022 WL 1208167, at \*6 (C.D. Cal. Mar. 29, 2022) ("mere delay in the litigation does not establish undue prejudice")  This remains just as true now as it did when the Court stayed the matter in November 2022.

In contrast, while a stay will not unduly prejudice Valtrus, as detailed further below, moving forward with the litigation in parallel with the '704 IPR appeal and Google's '809 *ex parte* reexamination, *will* unduly prejudice Google, as Google and the Court will be forced to expend substantial resources in litigation on claims that may be canceled in the IPR proceedings or on claims which may well be impacted by claim construction rulings on appeal or in *ex parte* reexamination.  Notably, as discussed further below (§ II(D)), this is true even if the Court were to (although Valtrus did not ask for it) dismiss the '764, '005, and '454 patents **with** prejudice. Weighing the very little to no prejudice Valtrus will suffer if the case continues to be stayed against the tremendous prejudice Google will suffer if not, the first factor strongly favors a stay.

2.      ***Valtrus shows no legitimate concern regarding loss of evidence.***

As it did in opposing a stay in 2022, Valtrus again mischaracterizes testimony of Google's witnesses in attempting to manufacture prejudice from a stay.  *Compare* Motion to Stay Opp. (Dkt. 162), 10-11 *with* Br. 7-8.  But these arguments are as baseless now as Google showed they were (Dkt. 176, 4-6) before the Court implicitly rejected them.

For example, Valtrus contends that a stay would prejudice it because Google "delete[s]" code.  Br. 7.  Not so.  Valtrus's quote shows that the witness said "it's possible" that code was deleted" (*Id.*), but as Google pointed out in its MTS Reply (Dkt. 176 at 4), the witness followed up to say that he did not know when code might have been deleted.  Dkt. 177, Ex. 3, App. 25, 93:12-14.  And as Google also pointed out in its MTS Reply, which Valtrus ignores, Google (like most companies) uses a versioning system for source code, so if older code is not currently used, it is still available.  Dkt. 177, Ex. 4, App. 30, 26:11-19 ("Every time you submit a code, as a code, you submit has a unique number there. I think this is also common practice, even for the company that I worked before. If anything goes wrong you can revert that specific change, right, to go to the old—old code base.").

Valtrus also again cites deposition testimony that it contends shows that the witnesses' memory has faded regarding "features and functionalities of the accused products."  Br. 8; Dkt. 173, 10-11.  But Valtrus's citations, which it does not even discuss in its Motion, are out of context, unrelated to the accused products, or outside the scope of the witnesses' knowledge.  For example, Valtrus points to where it broadly asked Mr. Berman (who was not a Rule 30(b)(6) designee) about his responsibilities during the *nine* years he was at Google, which is untied to any accused products.  Dkt. 173, 10-11.  As to Valtrus's reliance on deposition excerpts from Mr. Lehman's testimony—a deposition is not a memory test.  Mr. Lehman was not a Rule 30(b)(6) witness, and Valtrus did not introduce any source code at this deposition.  Dkt. 177, Ex. 5, App. 34-35.  It is reasonable that Mr. Lehman may not remember source code from years ago without the source code to reference.  And as for Mr. Moulton, Valtrus cites questions regarding functionality he was not designated for and/or did not work on. Dkt. 177, Ex. 6, App. 39, 115:4-24.  Here too, Google made these same

15

points in its MTS Reply (Dkt. 176, 4-5), but Valtrus just ignores them in repeating the same argument that the Court implicitly rejected.

Valtrus again argues there are risks of losing third-party evidence. *Compare* Motion to Stay Opp. (Dkt. 162), 10-11 *with* Br. 7-8. This time, Valtrus points to only one supposed example, Valtrus indicated it sought (during the IPR) certain third-party webpages describing source code from Verity, the original assignee of the '764 patent, which it says "are highly relevant to conception and reduction to practice." Had Valtrus been so concerned about the risk of potential loss of this evidence, it would have sought it at the first opportunity. But Valtrus did not seek this (or any other third party discovery) before the stay, further belying any claim of prejudice. And despite Valtrus's unsupported conclusions, it is unclear whether any evidence regarding supposedly relevant websites was "lost," or if they simply never existed in the first place. Rather, as before, Valtrus presents no reason to believe a stay will have any meaningful impact on any evidence regarding conception and reduction to practice from over twenty years ago beyond what may have already occurred due to the delay in bringing this case in the first place. As this Court previously noted, "that the events in question happened years ago does not automatically warrant parallel and duplicative proceedings to avoid loss of evidence." Dkt. 179, 3. In actuality, as the Court already observed in granting the stay: "third parties who have received subpoenas would benefit from a stay in this case. If any asserted patents are invalidated, the subpoenas would become moot, or at minimum, narrowed in scope. The inconvenience of a delay is outweighed by the benefit of potentially limiting the documents that the third parties will be required to produce."[6] *Id.*, 3.

---

[6] And, significantly, Valtrus's litigation strategy suggests that the burden on third parties is likely to be high. In the '704 and '764 IPRs, the PTAB allowed narrow document and deposition discovery. *See Valtrus Innovations, Ltd. v. Micro Focus Software, Inc.*, No. 2:22-mc-399, Dkt. 1-

**B.**    **The Stay Will Continue to Simplify And Streamline The Issues And Reduce The Burden Of Litigation On The Court And The Parties**

      1.    *The Stay Pending Appeals Has And Will Continue To Streamline The Issues*

Valtrus concedes (Br. 1) that the stay entered by the Court has already narrowed the issues with the '764, '005, and '454 patents having been found unpatentable. But Valtrus's (improper) attempt to lift the stay and dismiss these patents without prejudice would undercut this narrowing by introducing the possibility of inefficient and duplicative litigation.

Further, contrary to Valtrus's conclusion (Br. 2), the issues can be narrowed further with a continued stay. Indeed, as courts have often noted, continuing stays during the pendency of IPR appeals can simplify the issues remaining in the case and prevent wasting resources by the parties and the Court. *See, e.g.*, *Masimo Corp.*, No. SACV2000048JVSJDEX, 2024 WL 751008, at *2; *Baxter Healthcare Corp. v. Becton, Dickinson and Co.*, No. 3:17-CV-2186 JLS-RBB, 2021 WL 22553, at *3 (S.D. Cal. Jan. 4, 2021); *Cellwitch*, 2021 WL 9145413, at *2; *DivX*, 2022 WL 1208167, at * 4-5; *MemoryWeb*, 2023 WL 8006852, at *1; *Realtime Data LLC v. Silver Peak Sys., Inc.*, No. 17-CV-02373-PJH, 2018 WL 3744223, at *1–2 (N.D. Cal. Aug. 7, 2018); *Parallax Grp. Int'l, LLC v. Incstores LLC*, No. SACV1600929JVSDFMX, 2021 WL 3508231, at *1 (C.D. Cal. May 12, 2021).

Significantly, regardless of Valtrus's intentions with regard to appeals of the '764, '005, and '454 IPR decisions, Google intends to appeal the PTAB's final decision regarding the '704 patent. This cuts against lifting the stay because of the potential that the Federal Circuit reverses

---

9 (D. Utah June 19, 2023). Valtrus turned the Board's focused discovery plan into *thirty-eight* separate subpoenas, twenty-eight directed at Micro Focus alone. Micro Focus objected to the subpoenas on the basis of harassment and undue burden, so Valtrus initiated yet another lawsuit in the District of Utah to file a motion to compel. *See Valtrus Innovations, Ltd. v. Micro Focus Software, Inc.*, No. 2:22-mc-399, Dkts. 1, 1-12 (D. Utah June 19, 2023).

the PTAB's decision.  Thus, "[m]aintaining the stay still has the potential to 'simplify the issues in question and trial of the case.'"  *MemoryWeb*, 2023 WL 8006852, at *1 (quoting *Robert Bosch Healthcare Sys., Inc. v. Cardiocom LLC*, No. 14-cv-01575-EMC, 2017 WL 6939167, at *1 (N.D. Cal. Mar. 16, 2017)).  As the court found in *MemoryWeb* in denying a request to lift a stay where the defendant was appealing final written decisions in IPRs on two asserted patents, the

> Federal Circuit may overturn part or all of each of the PTAB's decisions. It would be a waste of resources for both the parties and the Court to conduct discovery, engage in motion practice, prepare for trial, and so on, only for the Federal Circuit to rule on the appeal and render all of that work irrelevant or inadequate."

*Id.*; *see also DivX*, 2022 WL 1208167, at * 4-5 (continuing stay pending appeal of IPRs confirming claims as "appeals from PTAB decisions finding asserted claims patentable can simplify the issues remaining for trial, including by invalidating claims that would otherwise be at issue in the case" and "avoid the parties and the Court unnecessarily expending resources engaging in further discovery and pretrial motion practice regarding any such claims") (cleaned up); *Realtime Data*, 2018 WL 3744223 at *1–2 (finding the second factor supported continuing the stay pending appeal where the PTAB found some asserted claims patentable and others unpatentable and the parties appealed some of the PTAB decisions); *Cellwitch*, 2021 WL 9145413, at *2 ("A continued stay is justified . . . if IPR petitions and appeals from the PTAB decisions . . . could both simplify the issues in an obvious way – the PTAB or the Federal Circuit could invalidate claims that would otherwise be at issue in this action.") (internal quotation omitted); *Parallax Grp.*, 2021 WL 3508231, at *1 (denying motion to lift stay because "[a]n appeal concerning the validity of the [asserted patent] is still pending before the Federal Circuit, and until that court decides the issues in that appeal, lifting the stay is premature. Doing otherwise would risk inconsistent results and eliminate the purpose of the original stay, namely to 'obtain guidance from the PTO' and 'avoid the needless waste of judicial resources.'").

Valtrus argues that any such simplification would be unlikely given the Federal Circuit's high affirmance rate of PTAB decisions. Br. 1-2. But as the court found in *DivX*, "even if 'the Federal Circuit's affirmance of the PTAB decisions may be statistically more likely, this outcome is far from a foregone conclusion.'" *DivX*, 2022 WL 1208167, at * 4; *see also Cellwitch*, 2021 WL 9145413, at *3 (refusing to "speculate as to how the Federal Circuit will decide the parties' appeals" and finding that "the Federal Circuit's decision could change the scope and course of litigation midstream, creating an unnecessary use of resources and an unavoidable burden on the parties and the Court"); *Parallax Grp.*, 2021 WL 3508231, at *1 ("The Court will not divine how the Federal Circuit will respond to Parallax' appeal . . . .").

Moreover, "the Federal Circuit's de novo review of the PTAB's claim constructions of the patents-in-suit may also provide guidance that will further simplify the issues before this Court." *Baxter Healthcare*, 2021 WL 22553, at *3; *Cellwitch*, 2021 WL 9145413, at *3 ("Even if the Federal Circuit affirms the PTAB Decision, it makes little sense to have the parties engage in claim construction discovery and briefing, and for the Court to construe claims, when the Federal Circuit may undertake that same task in considering the parties' appeals.") (cleaned up). For example, while the PTAB asserted it did not resolve the construction of any terms of the '704 patent ('704 FWD, 11), it at least implicitly did so in finding that the references Google raised do not disclose the limitation of "assigning to each selected entry of said set of selected entries a scoring value according to a scoring function" in the '704 patent. *Id.*, 29-32. In the litigation, Valtrus has asserted that "a scoring function" is met by multiple scoring functions employed by multiple so-called search engines. Ex. A-5 (Ex. A to Valtrus's Feb. 15, 2023 Updated Second Infringement Contentions) at App. 166. But in the IPR, Valtrus successfully argued that could only be met by a ***single*** scoring function. Google intends to raise the PTAB's implicit claim construction on

appeal, which is directly relevant to Valtrus's infringement allegations.

2.        ***Google's Ex Parte Reexamination Will Further Narrow The Issues***

Continuing the stay while the *ex parte* reexamination of the '809 patent is pending will also simplify the issues in this case.  The *ex parte* reexamination request challenges all the claims in the '809 patent.  Ex. A-1 ('809 patent Reexamination Request) at App. 24-25.  Additionally, the *ex parte* reexamination presents different prior art and arguments than those included in the IPR denial.  *Compare* Ex. 1 ('809 patent Reexamination Request) at App. 24-25 (challenged grounds rely on prior art references Theimer, Hoekstra, and Fung) *with* Dkt. 182-3 ('809 patent IPR Denial) at 6 (not mentioning those references).  The "likelihood of cancellation or modification of most or all the claims validates the simplification of the proceedings by issuance of a stay" pending resolution of the *ex parte* reexamination.  *Polaris Powerled Techs., LLC v. Dell Techs. Inc.*, No. 1:22-CV-0973-RP, 2023 WL 5282381, at *3 (W.D. Tex. Aug. 15, 2023) (granting motion to stay pending resolution of *ex parte* reexamination); *see also In re Corel Software LLC*, 778 F. App'x 951, 954 (Fed. Cir. 2019) (denying writ of mandamus as to stay order pending *ex parte* reexamination, finding "[t]he initial stay pending the *inter partes* review proceedings was reasonable in light of the prospect of simplifying the district court litigation" and "[t]he court also acted reasonably in denying [plaintiff]'s request to lift the stay during the period that the [*ex parte*] reexamination of the '309 patent was pending").

The *ex parte* reexamination of the '809 patent could also narrow or inform claim construction issues.  For example, in the IPR, Valtrus argued the prior art was using a software counter and not the hardware counter required by the claims.  Ex. A-6 (IPR2022-01197, Preliminary Patent Owner Response) at App. 170 ("Because Ogawa's counters and registers operate under the control of the task-specific software order issued by the CPU, Ogawa does not disclose a 'hardware based' utilization metering device or method.").  The PTAB relied on

20

Valtrus's argument in denying institution of the IPR.  Dkt. 182-3, Ex. 2 (IPR2022-01197, Institution Decision) at App. 0022 ("distinct from claim 1, Ogawa runs a 'program' in order to obtain the CPU's usage rate").  Yet, Valtrus has contended in the litigation that the '809 patent is not limited to using a hardware counter.  *E.g.*, Dkt. 106, 10 (asserting software-based Linux kernel meets counter limitation for infringement); Dkt. 132, 22 ("nowhere in the claims or specification are the '***counter***, 'system clock,' or 'data usage provider' specifically required to be purely hardware components.")  Continuing the stay pending resolution of the *ex parte* reexamination would allow the PTO to address Valtrus's arguments from the IPR that contradict its arguments in the district court before the stay.  Indeed, this issue is squarely before the Court already in claim construction (*id.*), which has yet to be decided, also creating the risk of inconsistent rulings.  And any further delay based on the *ex parte* reexamination to narrow or inform the issues here would be a result of Valtrus's own improper shifting of positions when arguing invalidity before the PTAB vs. infringement in this Court.  *Cf. In re Corel Software LLC*, 778 F. App'x at 954 (defendant acted reasonably in not bringing *ex parte* reexamination earlier because it had no reason to challenge plaintiff's newly added claims).

### C.    The Litigation Remains In Its Early Stages

The Court already found this factor also favors a stay because this case is in its early stages, with no claim construction having been decided, no dispositive motions being decided, no deadline for fact or expert discovery set, and no trial date set.  Dkt. 179, 4.  This all remains true.  With no fact discovery deadline, the parties were still producing documents on a rolling basis and the parties had yet to identify their respective email custodians.  And as no *Markman* hearing has been scheduled, consequently, there is no scheduled start date for damages-related or willfulness-related discovery.  Dkt. 51. So there still "remains a significant amount of work ahead for the parties and the court." *Blephex*, 2016 WL 7839343, at *2.  That the existence of a stay may not itself favor a

stay as Valtrus contends (Br. 11), is of no moment.  It is the undisputed early stage of the case that favors continuing the stay, not the mere fact a stay exists.

      **D.**      **Valtrus's Cases Do Not Support Lifting the Stay.**

      While Valtrus cites cases where courts declined to stay cases, or lifted stays, during IPR appeals, as detailed herein, numerous courts have found otherwise.  Ultimately, whether the stay should be lifted depends on the circumstances *here*, and as demonstrated herein, the relevant facts here demonstrate the stay should not be lifted.  Valtrus's distinguishable cases do not show otherwise.

      For example, Valtrus omits a key distinction between *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452, 2020 WL 6270776, at *4-5 (D. Del. Oct. 26, 2020), and this case.[7]  Br. 5.  While the court did lift a stay pending IPR despite a potential appeal of patents found to be unpatentable, the court found "with regard to [defendant] Ingenico's concern that [plaintiff] IOENGINE may seek further review and then seek to relitigate some of the claims that were invalidated by the PTAB, IOENGINE states that it is prepared to proceed in these consolidated cases on only the three asserted claims that were not held unpatentable by the PTAB, so 'there is no possibility of this outcome.'"  While as detailed above, Valtrus says it is willing to dismiss the '764, '005 and '454 patents, it seeks to do so explicitly *without* prejudice.  So there absolutely *is* a "possibility" of Valtrus seeking to relitigate some of these claims that were invalidated by PTAB should it be successful on appeal.  Again, that appears to be Valtrus's entire point of dismissing these patents with*out* prejudice.

      Valtrus further argues "[t]his Court has lifted stays pending IPRs despite the possibility of

---

[7]  The court's commentary regarding case law that Valtrus cites (Br. 3), was in its commentary on the defendant's assertion that it was "routine" to stay cases through IPR appeals.  *IOENGINE, LLC*, 2020 WL 6270776, at *4-5.

appeal or even PTAB rehearing."  Br. 5.  The only case from this Court (as opposed to the district

generally) Valtrus cites is *Canon Inc. v. Avigilon USA Corp.*, No. 3:17-cv-2733, Dkt. 88 (N.D.

Tex. June 10, 2019), which it characterizes as "lifting stay despite pending rehearing."  Br. 5.  That

case is not remotely comparable to the situation here.  Rather, in that case, the PTAB ***denied***

institution of the IPR for which the stay was entered.  So the plaintiff moved to lift the stay because

the PTAB panel had denied institution.  *Canon*, No. 3:17-cv-2733, Dkt. 88, 1.  Based on the Order,

unlike here, the defendant's only apparent argument against lifting the stay is that it had brought a

motion for rehearing before the same panel that denied institution.  *Id.*  Here, as discussed below,

the "mixed result in the PTAB's decision . . . justifies a continued stay to avoid duplicate efforts

for the parties and the courts."  *Cellwitch*, 2021 WL 9145413, at *2.

Further, while Valtrus contends *CUPP Cybersecurity LLC v. Trend Micro, Inc.*, is a

"remarkably similar" case from a court in this district, Valtrus merely points to the common fact

pattern that some patents were found patentable and some unpatentable and that the parties were

appealing those decisions.  Br. 5-6 (citing *CUPP*, No. 3:18-cv-1251, Dkt. 73 (N.D. Tex. Oct. 5,

2020) (Lynn, J.)).  Unlike this case, the *CUPP* court  found the case was not in the early stages,

since the *CUPP* court had already completed a claim construction hearing, which has not occurred

here.  And the short order following a CMC statement (not a briefed motion) is silent as to whether

the patents that the plaintiff intended to proceed with had similar accused products to those on

appeal, what commitments plaintiff made in terms of dismissal of those patents, and other relevant

details.  *Id.*; *see also iLife Techs., Inc. v. Nintendo of Am., Inc*., No. 3:13-cv-4987, Dkt. 106 (N.D.

Tex. July 11, 2016), cited at Br. 5 (short order without details regarding facts of case); *ZitoVault,*

*LLC v. Int'l Bus. Mach. Corp.*, No. 3:16-cv-0962, Dkt. 65 at 2 (N.D. Tex. May 10 2017), cited at

Br. 5 (short order lifting stay where only one patent was involved, and defendant had appealed

PTAB decision finding patent at issue not unpatentable).

Valtrus also cites *Oyster Optics, LLC v. Ciena Corp. et al.*, No. 4:20-CV-02354, Dkt. 84 (N.D. Cal. Nov. 1, 2021) where the court agreed to lift a stay as to certain claims where plaintiff agreed to drop claims found unpatentable in the IPR. The court specifically did not address whether dropped claims for narrowing could be pursued in later litigation. *Id.*, 2-4. It did note, however, "the Court would not look favorably on a request by Oyster to resume litigation on those claims in this case." *Id.*, 4. Yet, that is exactly what Valtrus wants to be able to do through its dismissal without prejudice of the invalidated claims it will likely appeal. In *Acqis, LLC v. EMC Corp.*, No. 14-cv-13560, 2016 WL 4250245, at *2-3 (D. Mass. Aug. 10, 2016), unlike here, a claim construction order had already issued and the patents plaintiff sought to pursue had not yet expired, both points the court specifically relied on in lifting the stay. *Id.* And in *Papst Licensing GmbH & Co., KG v. Apple, Inc.*, No. 6:15-CV-01095, 2018 WL 3656491, at *2 (E.D. Tex. Aug. 1, 2018), in denying a stay pending appeals the court noted that, unlike here, "this case has progressed through claim construction, fact and expert discovery and exchange of pretrial disclosures. . . . With trial to be set approximately three months away, the stage of litigation warrants against a stay." *Id.*, at *2-3. The court further noted that the defendant had not indicated how a stay could narrow the issues for claim construction, which Google has detailed below. *Id.*, 4-5. *Infra*, 18-20.

Further, in *Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*, No. 6:18-CV-00407, Dkt. 164 (E.D. Tex. Oct. 20, 2022), the court did lift the stay but the age of plaintiff's owner and primary trial witness presented a concern about his ability to testify at trial and the claim at issue had twice been found not unpatentable by the PTAB. *Id.*, 1-2. Also, the Court had, unlike here, already held a claim construction hearing and the case was set for trial before the stay. *Id.*, 2. In *Zipit Wireless Inc. v. Blackberry Ltd.*, No. 6:13-cv-02959, 2016 WL 3452735, at *2-3 (D.S.C. June 24, 2016),

there was a risk that both parties may become bankrupt during the requested stay and it was unclear whether the plaintiff intended to later pursue and/or appeal the claims invalidated in the IPR.  *See also Medtronic, Inc. v. Axonics Modulation Techs., Inc.*, No. SA CV-02115, 2021 WL 6618872, at *2 (C.D. Cal. Oct. 21, 2021) (short order without explanation of procedural posture of asserted claims and patents after IPR, what was on appeal, or what would be pursued).

### III.    Keeping the Stay in Place Is Appropriate Even Were the '764, '005, and '454 Patents Dismissed with Prejudice

Valtrus made a Rule 408 offer to dismiss the '764, '005, and '454 patents with prejudice in exchange for Google agreeing to lift the stay.  But it does not seek that relief in its Motion.  So Valtrus waived any alternative argument it could have made for a stay with dismissal of these patents with prejudice.  *Cavazos,* 388 F. App'x at 399; *Alvarez,* 2014 WL 3557435, at *2.

But as noted above, even were these patents dismissed with prejudice, maintaining the stay would still be appropriate.  Again, Google intends to appeal the FWD finding the '704 patent not unpatentable.  So there is still a likelihood of elimination or narrowing of the issues for the '704 patent on appeal, either by a reversal finding it invalid or through the specific narrowing identified above or otherwise, which favors keeping the stay in place.  *Supra*, § II(B)(1).  This remains true regardless of whether the '764, '005, and '454 patents are dismissed with prejudice or not.  Google also explained how its *ex parte* reexamination application may eliminate or narrow the issues for the '809 patent, which also favors keeping the stay in place.  *Supra*, § II(B)(2).  And here too, this would be true whether the '764, '005, and '454 patents are dismissed with or without prejudice.[8]

### CONCLUSION

Because all relevant factors cut against Valtrus, Valtrus's Motion should be denied.

---

[8] To be clear, Google does not oppose the dismissal of Valtrus's claims as to the '764, '005, and '454, or any other patents, with prejudice now as there is no merit to these claims.  But, regardless, the stay should remain absent dismissal with prejudice of the '704 patent for the reasons stated.

DATE: May 17, 2024

Respectfully submitted,

/s/ *Michael K. Hurst*

Michael K. Hurst
mhurst@lynnllp.com
Texas Bar No. 10316310
Julia Simon
jsimon@lynnllp.com
Texas Bar No. 00784970
Joshua D. Lang
jlang@lynnllp.com
Texas Bar No. 24109450
LYNN PINKER HURST &
SCHWEGMANN LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 (Telephone)
(214) 981-3839 (Facsimile)

David A. Perlson
Antonio Sistos
Michael Trombetta
Elle Wang
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6600 (Telephone)
415-875-6700 (Facsimile)

Deepa Acharya
Patrick Stafford
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street, NW
Washington, DC 20005
202-538-8107 (Telephone)
202-538-8100 (Facsimile)

***ATTORNEYS FOR DEFENDANT
GOOGLE LLC***

27

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2024, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to counsel for all parties of record.

*/s/ Michael K. Hurst*