IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VALTRUS INNOVATIONS LTD. | § | |
| and KEY PATENT | § | |
| INNOVATIONS LIMITED, | § | |
|      Plaintiffs, | § | |
| | § | No. 3:22-CV-066-L-BW |
| v. | § | |
| | § | (consolidated w/ No. 3:24-CV-1795-L) |
| GOOGLE LLC, | § | |
|      Defendants. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

On February 7, 2025, Defendant Google LLC, filed its "Motion to Transfer Case out of District/Division," (*see* Dkt. No. 237 ("Google's Trsfr. Mot.")), and its "Unopposed Motion to Partially Seal Google's Brief ISO Its Motion to Transfer and Its Appendix ISO Its Motion to Transfer," (*see* Dkt. Nos. 238 ("Google's Mot. to Seal"), 238-1 ("Google's Trsfr. Br."), 238-2 ("Google's App.")). Plaintiffs Valtrus Innovations Ltd. ("Valtrus"), and Key Patent Innovations Limited ("KPI"), (collectively "Plaintiffs"), filed their response in opposition to the motion to transfer venue along with a redacted appendix on April 7, 2025, (*see* Dkt. No. 266). That same day, Plaintiffs also filed an "Unopposed Motion to Seal Portions of their Opposition to Defendant Google LLC's Motion to Transfer Venue and Appendix Filed in Support Thereof," (*see* Dkt. Nos. 267 ("Pls.' Mot. to Seal"), 267-2 ("Pls.' Unredacted Resp."), 267-3 ("Pls.' App.")). Google filed its reply in support of its motion to transfer venue on April 28, 2025, (*see* Dkt. No. 275 ("Google's Reply")), and the corresponding appendix, (*see* Dkt. No. 276 ("Google's Reply App.")). On

May 28, 2025, Plaintiffs filed a "Contingent Motion to Transfer Venue," (*see* Dkt. No. 286 ("Pls.' Cont. Mot. Trsfr.")), and a supporting appendix, (*see* Dkt. No. 287 (Pls.' Cont. Mot. App.")).  United States District Judge Sam A. Lindsay referred this case to a magistrate judge for pretrial management, and the referral has been reassigned to the undersigned magistrate judge.  (Dkt. Nos. 226, 262, 263.)

For the reasons stated below, the Court **GRANTS** the parties' motions to seal, **GRANTS** Google's motion, **DENIES** Plaintiffs' contingent motion to transfer, and **TRANSFERS** this action to the Northern District of California.

## I. BACKGROUND

This case arises out of alleged patent infringement.  At issue in this lawsuit are three patents: U.S. Patent Nos. 6,728,704 ("the '704 Patent"),  6,816,809 ("the '809 Patent"), 7,346,604 ("the '604 Patent") (collectively the "Asserted Patents").  (Pls.' Unredacted Resp. at 2.)  Valtrus is the successor in interest to a patent portfolio created by Hewlett-Packard Enterprises ("HPE").  (*Id.*)  Generally, the patent infringement allegations of the Asserted Patents are directed at the functionality in Google Search and Google Cloud.  (Google's Trsfr. Br. at 2.)  Valtrus is an Irish company, with no offices or employees in the United States.  (Google's Trsfr. Br. at 1.)  KPI is also an Irish company and similarly has no offices or employees in the United States.  (*Id.*)  Google is an American company headquartered in Mountain View, California.  (*See id.*)

Valtrus filed its initial complaint on January 10, 2022, (Dkt. No. 1 ("Compl.").)  Discovery began and continued until November 2, 2022, when the

Court granted Google's motion to stay pending resolution of Google's petition for *inter parties* review ("IPR"). (Dkt. No. 179.) On December 2, 2024, the Court granted Plaintiffs' motion to lift the stay. (Dkt. No. 203.)

Google moved to transfer the case under 28 U.S.C. § 1404(a), arguing that the Northern District of California ("NDCA") was a more convenient forum. Google asserts that at least ten potential witnesses—including employees who worked on developing the accused products and patent inventors—the patent prosecution law firms, and other relevant third-party witnesses reside in NDCA.

Plaintiffs oppose the motion and maintain that the proper venue is here in the Northern District of Texas ("NDTX"). Alternatively, they assert that if the Court concludes that this is not the most convenient venue, the proper transferee Court is the Austin Division of the Western District of Texas ("WDTX"). Plaintiffs argue that the case should remain here because one of Google's physical data centers is in Midlothian, Texas, which is in this district. (Pls.' Unredacted Resp. at 1.) Google has 19 data centers in North America—14 that are currently functioning and 5 in development.[1] (Pls.' App. at 166.) Plaintiffs also contend that Google waited too long to seek transfer. (*Id.*)

---

[1] The 19 locations are: Central Ohio; Council Bluffs, Iowa; The Dalles, Oregon; Douglas County, Georgia; Ellis County, Texas; Fort Wayne, Indiana; Henderson, Nevada; Jackson County, Alabama; Kansas City, Missouri; Lenoir, North Carolina; Lincoln, Nebraska; Lowcountry, South Carolina; Mayes County, Oklahoma; Mesa, Arizona; Montgomery County, Tennessee; Nebraska; Northern Virginia; Red Oak, Texas; Storey County, Nevada. (Pls.' App. at 166.)

## II. MOTIONS FOR LEAVE TO FILE UNDER SEAL

The Court **GRANTS** the parties' motions to file under seal. (*See* Google's

Mot. to Seal; *see also* Pls.' Mot. to Seal.)  Northern District Local Rule 79.3(b) states

that, "[i]f no statute or rule requires or permits a document to be filed under seal, a

party may file a document under seal only on motion and by permission of the

presiding judge."  No statute or rule requires or permits sealing here; therefore, the

Court must determine whether sealing is warranted.

Courts "heavily disfavor sealing information placed in the judicial record."

*June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519-20 (5th Cir. 2022).  In

determining whether a document should be sealed, a court undertakes a "document-

by-document, line-by-line balancing of the public's common law right of access

against the interests favoring nondisclosure."  *Binh Hoa Le v. Exeter Fin. Corp*, 990

F.3d 410, 419 (5th Cir. 2021) (internal quotation marks and citations omitted).  This

standard is "arduous," and the balancing test is stricter than it is at the discovery

stage.  *June Med. Servs.*, 22 F.4th at 521.  "[T]he working presumption is that judicial

records should not be sealed."  *Binh Hoa Le*, 990 F.3d at 419 (citation omitted).

Regarding Google's unopposed motion to seal, after balancing the competing

interests, the Court finds that the interests support nondisclosure.  Google has limited

its request to seal to only three exhibits, and portions of the brief that refer to

information contained within those exhibits.  A redacted brief, and the remaining

exhibits, were filed and are available to the public.  (*See* Dkt. No. 237.)  Google also

contends that the information within those exhibits is information not generally

-4-

available to the public, (Google's Mot. to Seal at 3), and it points out that the

information is being offered in relation to a non-dispositive motion, (*id.*).

Accordingly, Google's unopposed motion to seal is **GRANTED**.

Valtrus also filed an unopposed motion to seal. (*See generally* Pls.' Mot. to

Seal). Plaintiffs assert that they "file[] this motion solely for the benefit" of Google

and non-party Advanced Micro Devices ("AMD") since their opposition references

material deemed confidential. (*Id.* at ECF p. 1.) Plaintiffs have, similarly to Google,

filed public redacted versions of the documents and have limited their request to seal.

Balancing the relevant interests, the Court finds that the interests support

nondisclosure and **GRANTS** Plaintiffs' unopposed motion to seal.

### III. MOTIONS TO TRANSFER

Google argues that the case should be transferred to the Northern District of

California. (*See generally* Google's Trsfr. Mot.) Plaintiffs argue that the correct venue

is in the Northern District of Texas but that, if the Court is inclined to transfer the

case, the better transferee court is the Austin Division of the Western District of

Texas. (*See generally* Pls.' Cont. Mot.) The Court first considers whether NDTX or

NDCA is the more convenient forum. If the Court concludes from that analysis that

the case should be transferred pursuant to 28 U.S.C. § 1404(a), it will then consider

whether it should be transferred to NDCA or WDTX.

### A. Legal Standards

Section 1404(a) provides that "[f]or the convenience of parties and witnesses,

in the interest of justice, a district court may transfer any civil action to any other

district or division where it might have been brought." "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F. Supp. 2d 808, 811 (N.D. Tex. 2002) (citing *Stabler v. N.Y. Times Co.*, 569 F. Supp. 1131, 1137 (S.D. Tex. 1983)). "The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Sivertson v. Clinton*, No. 3:11-CV-0836-D, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (citing *Fowler v. Broussard*, No. 3:00-CV-1878-D, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001)).

As a preliminary question, the court must decide "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 203 (5th Cir. 2004). Once the court resolves this issue, "the determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." *Id.* (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)).

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

> The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  The Fifth Circuit has emphasized that, "[a]lthough [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *In re Volkswagen of Am., Inc. ("Volkswagen II")*, 545 F.3d 304, 315 (5th Cir. 2008).  "Pertinent here, courts have considered a party's delay in denying a motion to transfer." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (internal quotations omitted).

The moving party bears "the burden of proving by a preponderance of the evidence that transfer is appropriate." *Bank One, N.A.*, 211 F. Supp. 2d at 812 (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)).  Further, "[w]here there is no demonstration by the movant, let alone a clear one, the [district] court cannot weigh a factor against the non-movant and in favor of transfer." *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022).

Moreover, "'the plaintiff's choice of forum has reduced significance where most of the operative facts occurred outside the district.'" *Baxa Corp. v. ForHealth Techs., Inc.*, No. 3:05-CV-2274-D, 2006 WL 680503, at *2 (N.D. Tex. Mar. 15, 2006) (quoting *Minka Lighting, Inc. v. Trans Globe Imps., Inc.*, No. 3:02-CV-2538-G, 2003 WL 21251684, at *1 (N.D. Tex. May 23, 2003)).

B.   **Analysis**

   1.   **The Northern District of California is a more convenient forum compared to this district.**

      a.   **Threshold Question**

As an initial matter, the Court addresses whether the case could have originally been brought in the NDCA.  Google asserts that NDCA is a proper venue pursuant to 28 U.S. Code § 1400(b).  (Google's Trsfr. Br. at 14.)  Under § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides[.]"  28 U.S. Code § 1400(b).  The Federal Circuit has explained that "the case law and statute reveal three general requirements relevant to the inquiry: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

Google resides in NDCA.  Google is headquartered in Mountain View, California, a city within NDCA.  (*See* Google's App. at 280.)   Therefore, Google resides in NDCA and may be sued there.

      b.   **Private interest factors favor transfer to NDCA.**

         i.   **Relative ease of access to sources of proof.**

The first factor focuses on the location of "documents and physical evidence relating to the [case]."  *Volkswagen II*, 545 F.3d at 315-16.  "The question is relative ease of access, not absolute ease of access."  *In re Radmax, Ltd.,* 720 F.3d 285, 288

(5th Cir. 2013.  That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case.  *See Volkswagen II*, 545 F.3d at 316.

But when "the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]" this factor bears less strongly on the transfer analysis.  *See In re Planned Parenthood*, 52 F.4th at 630.  Notably, however, in *In re Google LLC*, the Federal Circuit held that a "district court erred by analyzing only the location of servers where documents are stored, rather than also considering the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval."  No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021) (unpublished).  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (analyzing transfer under Fifth Circuit law).

Here, Google argues that "[w]hile documents stored in the cloud may be hosted on Google data centers in multiple locations, including in Midlothian, those documents are not accessed at the data centers themselves but instead by employees who create and maintain those documents from the locations where they work." (Google's Trsfr. Br. at 22.)  Google further asserts that "[the] likely Google trial witnesses [that] create and maintain documents and source code related to their work on these accused products, and thus [are] potential document custodians for this case[]" are located in NDCA.  (*Id.*)

Plaintiffs counter by asserting that "[t]he only relevant physical evidence that is not digitally accessible" is the data center (Pls.' Unredacted Resp. at 13-14), and that AMD EPYC design files related to the '809 patent are in Texas (*id.* at 15). Addressing the physical data center first, Plaintiffs say that a jury view may be appropriate to better understand the alleged infringement of the '809 patent. (*Id.*) However, Plaintiffs provide no explanation or authority to support their assertion that seeing the physical data center would help a jury understand the alleged infringement, which occurs in the steps taken by components within the processor. (*See id.*; *see also* Google's Reply at 7.) Turning to design files and source code for the AMD EPYC processors, Plaintiffs say, "Google has provided no showing this evidence is equally accessible in California." (Pls.' Unredacted Resp. at 15.) Plaintiffs point the Court to Kevin Lepak's deposition to support this statement. (*Id.*) However, the relevant portion of Mr. Lepak's testimony addresses whether such internal documents are available for employees to access in Austin and makes no mention of Dallas or the Northern District of Texas. (*See* Pls.' App. at 195-196.)

Therefore, the likely custodians' residence in NDCA favors transfer. However, taking into consideration that the evidence is largely digital, this factor receives less weight. Accordingly, the Court weighs this factor slightly in favor of transfer.

### ii.    Availability of compulsory process to secure the presence of witnesses.

The second private interest factor addresses the availability of compulsory process to secure witness attendance.  A subpoena may command a person's attendance at a trial, hearing, or deposition

> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.

Fed. R. Civ. P. 45(c)(1).  As the party seeking transfer, Google "has the burden to establish that [the District Court for the Northern District of California] has subpoena power over more unwilling witnesses than this Court."  *See R2 Sols. LLC v. Target Corp.*, No. 4:21-CV-92, 2021 WL 2550908, at *3 (E.D. Tex. June 22, 2021).  "[T]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify."  *In re TikTok, Inc.*, 85 F.4th 352, 360 (5th Cir. 2023) (quoting *Planned Parenthood*, 52 F.4th at 630–31).

Both parties have identified several potential third-party witnesses.  For example, within NDCA Google points to Hewlett Packard Inc., the predecessor in interest to the '704 and '809 patents, third-party law firms Fenwick & West and Cooley LLP, which were responsible for securing the patents, and George A. Mihaila (inventor of the '604 Patent).  Google also mentions Jianchang Mao (inventor of the '704 Parent) as a possible third-party witness.  (Google's Trsfr. Br. at

20.)  Mr. Mao, however, does not live in California and instead resides in Bellevue, WA.  (*Id.* at 20 n.13.)

On the other hand, Plaintiffs identify people in Texas who may be necessary to this lawsuit.  Plaintiffs name AMD engineers Dr. Lepak, Dr. Paul, and Dr. Bhargava as "critical to Valtrus' case with respect to the '809 Patent."  (Pls.' Unredacted Br. at 15.)  According to Plaintiffs, these employees—along with most senior AMD employees—reside in Austin, Texas.  (*Id.*)  Plaintiffs' further allege that due to AMD's close relationship with Google, these witnesses will unlikely be willing to testify voluntarily, and instead will require the Court to use its subpoena power.  (*Id.* at 16.)

The Court weights this factor as neutral.  As Plaintiffs point out, Google has not alleged that the third-party witnesses in California would be unwilling witnesses.  Similarly, Google has not alleged Mr. Mao would be an unwilling witness, although both locations would require traveling for Mr. Mao, Bellevue is significantly closer to NDCA than to Dallas and thus would be more convenient.  In contrast, Plaintiffs have alleged that AMD is unlikely to willingly testify due to its relationship with Google, but those witnesses are outside this district but inside this state.  The Court finds this factor to be neutral because, while Google has about twice the number of potential compulsory witnesses, Plaintiffs' witnesses are more likely to be unwilling.  Accordingly, balancing the evidence alleged, this factor is neutral.

### iii.    Cost of attendance for willing witnesses.

The third private interest factor addresses the cost of attendance for willing witnesses.  The convenience of witnesses is often regarded as the most important factor to be considered in deciding whether to transfer venue.  *AT & T Intellectual Prop. I L.P. v. Airbiquity Inc.*, No. 3:08-CV-1637-M, 2009 WL 774350, at *5 (N.D. Tex. Mar. 24, 2009)

The Fifth Circuit uses a "100-mile threshold" in assessing this factor.  *In re Tiktok*, 85 F.4th at 361.  "When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled."  *Id.* (internal quotation omitted).  This is an "obvious conclusion" because "it is more convenient for witnesses to testify at home[,]" and "additional distance means additional travel time . . . meal and lodging expenses" and time "witnesses must be away from their regular employment."  *Id.* (internal quotation omitted).  Witnesses also suffer "personal costs associated with being away from work, family, and community" when they testify far from home.  *Id.*

The party seeking transfer of venue must "identify the 'key witnesses and the general content of their testimony.'"  *Sargent v. Sun Tr. Bank, N.A.*, No. 3:03-CV-2701-D, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (quoting *Bank One*, 211 F. Supp. 2d at 812).  "'The party seeking the transfer must specify clearly . . . the key witnesses to be called and their location and must make a general statement of what their testimony will cover.'"  *AllChem Performance Prods., Inc. v. Oreq Corp.*, No. 3:11–

-13-

CV–3577–D, 2013 WL 180460, at *4 (N.D. Tex. Jan. 17, 2013) (quoting 15 Charles

Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851, at 221-22

(3d ed. 2007)); *see Magana v. Toyota Motor Corp.*, No. 3:10–CV–1451–B, 2010 WL

5108850, at *2 (N.D. Tex. Dec. 6, 2010) (finding that defendant failed to show good

cause for transfer based on this factor because it did not provide name, address, or

proposed testimony of any witness who could more conveniently testify in the

proposed transferee district).

Google identifies ten likely trial witnesses.  (Google's Trsfr. Mot. at 16.)  Of

those ten, it identifies eight employees—as well as a brief description of the

connection between their work and the accused products—and two prior inventors—

Prabhakar Raghavan ('704 Patent) and Krishna Bharat ('604 Patent)—who all reside

in NDCA.  (*Id.*)  Google further argues that Plaintiffs' corporate witness resides in

Ireland and will need to travel a considerable distance regardless which forum the

case is in.  (*Id.* at 17.)  Finally, Google brings up potential non-party witnesses—Ms.

Kumar, Mr. Riley, and Mr. Seaman—from Patent Platform Services.  (*Id.*)  Google

alleges that because these witnesses are interested parties, "they 'presumably will

testify willingly[.]'"  (*Id.* at 17 n.12.)  Notably, Ms. Kumar,[2] Mr. Ripley, and Mr.

---

[2] In their response, Plaintiffs state that "Ms. Kumar, resides in Aubrey, Texas, which is about 50 miles away from the Dallas courthouse."  (Pls.' Unredacted Resp. at 18.) Plaintiffs cite a Google Map showing the driving distance from the federal courthouse in Dallas to Aubrey, Texas, (Pls.' App at 545).  However, Plaintiffs' initial disclosures, (Google's App at 228), only have Patent Platform Services' Frisco address for Ms. Kumar. Thus, the Court engages in its analysis using the Frisco address.  Regardless, given that Frisco and Aubrey are a similar distance away from Dallas, and both are in the Eastern District of Texas, precisely which should be considered is immaterial.

Seaman all reside in Frisco, Texas (*see* Google's App. at 228), which, although physically near NDTX, is located in the Eastern District of Texas.

Plaintiffs argue that "Google ignores its Texas-based employees that Valtrus wants to bring to trial." (Pls.' Unredacted Resp. at 18.)  Plaintiffs identify 18 Google employees they allege have relevant information.  (*Id.* at 8.)  Ten of those are based in Austin, nearly 200 miles away from Dallas.  (*See id.*)  Five are in Dallas, and one is in Allen, Texas.  (*See id.*)  One is based in Katy, Texas, (*see id.*), which is around 257 miles from Dallas. And one, Kayleigh N., is a remote worker without a specified base.  (*See id.* at 8; *see also* Pls.' App at 332.)

For multiple reasons, the Court weighs this factor significantly in favor of transferring the case to NDCA.  Google points out that Plaintiffs' contentions that Google's Texas employees have knowledge of the allegedly infringing products is based purely on LinkedIn profiles and job titles.  (*See* Pls.' Unredacted Resp. at 8.) Courts in this circuit have rejected this method of creating connections to a venue. *See DDC Tech., LLC v. Google LLC*, No. 3:22-CV-1263-B, 2023 WL 2518846, at *5 (N.D. Tex. Mar. 14, 2023) (rejecting defendant's assertions "based solely on the LinkedIn profiles of the entities' purported employees").  The only Texas employee Plaintiffs expand on is Mr. Gannis, the CTO of Google Cloud.  (*See* Pls.' Unredacted Br. at 18.)  Google disputes that Mr. Gannis has relevant information.

The Court considers and weighs all the witness evidence presented.  Beginning with Mr. Gannis, even assuming he possesses relevant information, he is based in Austin, Texas, 200 miles away, and his presence does not favor keeping this case in

-15-

NDTX. The Court does take into consideration the Patent Platform Services employees who are potential witnesses, despite residing in a different district, they are non-party witnesses who are physically much closer to NDTX than to NDCA. Nonetheless, Google has provided at least ten potential witnesses, all with relevant information regarding the accused products, who reside in NDCA. Weighing the evidence presented, the Court finds that the bulk of the relevant witnesses reside in NDCA and thus, this factor favors transfer. *See In re Tiktok*, 85 F.4th at 361 ("The presence of one Texas witness cannot overcome the immense inconvenience that the majority of relevant witnesses would face if this case were to be tried in Texas.")

### iv. Practical problems that make trial of a case easy, expeditious, and inexpensive.

The fourth factor considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. This factor weighs against transfer when petitioners "inexcusably delayed" bringing their motion until "late in the litigation." *Planned Parenthood*, 52 F.4th at 631. But "garden-variety delay associated with transfer is not to be taken into consideration when" weighing this factor. *Radmax*, 720 F.3d at 289.

Here, Google argues that this factor favors transferring because "[a]ll dates in the Scheduling Order had been completed by the stay, and no dates have been set for close of fact or expert discovery, summary judgment, or trial. The Court has not held a *Markman* hearing[,]" and alleging the discovery already produced will still be useful if transferred. (Google's Trsfr. Br. at 23.)

Plaintiffs' main argument is that the transfer would delay the case and that "Google did not act with reasonable promptness." (Pls.' Unredacted Resp. at 10.) Plaintiffs accuse Google of judge and forum shopping and assert that Google provides no good reason to have waited this long to seek transfer. (*Id.* at 11.) Plaintiffs rely on *Wilson v. Texas Christian University*, in which the court denied a motion to transfer filed over a year after the original complaint. *See* No. 3:20-CV-00106-M, 2021 WL 12289114, at *3 (N.D. Tex. Aug. 2, 2021). By the time the court considered the motion to transfer in *Wilson*, it had "entered and modified the scheduling order, reviewed multiple substantive filings filed by Defendants, issued opinions, and become familiar with the case." *Id.*

The Court agrees that Google's delay in filing the motion to transfer weighs against transfer. However, it also takes into consideration other case-specific circumstances. On November 2, 2022, the Court granted Google's motion to stay pending resolution of the IPR. In the order to stay, the Court noted that "[t]his case has not yet been set for trial, and there are no dates for the close of fact and expert discovery. Moreover, the Court has not ruled on any dispositive motions, and the Court has not rendered a decision on claim construction." (Dkt. No. 179 at 4.) The case then remained stayed for over two years, until December 2, 2024. (*See* Dkt. No. 203.) Despite the passage of time, much of what was said in the previous order remains true: the case has not been set for trial, there are no dates for close of fact and expert discovery, the Court has not ruled on substantive motions, and—despite the parties submitting claim construction briefing—there has been no *Markman*

-17-

hearing nor a decision on claim construction.  Therefore, this factor weighs only slightly against transfer.

While Google could have acted with more promptness, the private factors weigh overall in favor of transfer to NDCA.

### c.    Public interest factors weigh in favor of transfer.

#### i.    The administrative difficulties flowing from court congestion

The first public factor considers "the administrative difficulties flowing from court congestion[.]"  *Volkswagen II*, 545 F.3d at 315.  The focus is on "docket efficiency[,]" an issue that "the district court is better placed" to evaluate.  *Planned Parenthood*, 52 F.4th at 631.  This factor normally weighs against transfer when the "case appears to be timely proceeding to trial before the" transferor district.

The parties disagree on the proper measure to use to compare time to trial is in each district.  Google asserts that the median time to jury trial in patent cases in NDCA is two years and four months (28 months), and two years and nine months in NDTX (33 months).  (*See* Google's Trsfr. Br. at 25.)  Google's time to trial is based on statistics for the January 1, 2010 to December 31, 2024 period.  (*Id.*)  Plaintiffs assert that the proper period is from January 10, 2022 to February 21, 2025.  (*See* Pls.' Unredacted Resp.)  Based on this period, Plaintiffs assert the time to trial in NDCA shows a median of 33 months and an average of 36 months.  (*See id.*)  Using that same date range, NDTX has an average and median time of 33 months.

-18-

"The Court finds that the [three-year] period is a better indicator of court congestion" than Google's 15-year period. *See DDC Tech., LLC*, 2023 WL 2518846, at *8 (finding that a one-year period was a better indicator of court congestion). Regardless, while the data demonstrates that time to trial in NDTX is somewhat faster, this difference is immaterial. *Anthony v. Henderson Cnty., Tex.*, No. 3:24-CV-2394-D, 2025 WL 746140, at *4 (N.D. Tex. Mar. 7, 2025) (finding that 3.8-month difference in time to trial immaterial). Therefore, this factor is neutral or, at most, only slightly favors denying transfer.

### ii.   The local interests in having localized interests decided at home

The sixth factor considers "the local interest in having localized interests decided at home." *Volkswagen*, 545 F.3d at 315. We look not to "the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit." *Def. Distrib.*, 30 F.4th at 435 (internal quotation marks omitted). "Indeed, the place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (cleaned up). Accordingly, "this factor weighs heavily in favor of transfer [when] . . . there is no relevant factual connection to the [transferor district]." *Volkswagen II*, 545 F.3d at 317–18. Also, this factor can weigh against transfer when the "citizens of [the transferor district] have a greater 'stake' in the litigation than the citizens of [the transferee district]." *Planned Parenthood*, 52 F.4th at 632.

-19-

Google argues that NDCA has a strong local interest in the resolution of this case. (Google's Trsfr. Br. at 24.) To support its position, Google asserts that the '704 Patent was developed at Verity, Inc., a company based in NDCA, (*id.*), and "much of the relevant prior art was also developed in NDCA[,]" (*id.*). The technical Google witnesses who worked on the accused products are primarily in NDCA, and therefore, Google attests NDCA has a local interest in the work and reputation of the individuals in its district. (*Id.*) Finally, Google once again asserts that Plaintiffs have no connection to this district, (s*ee id.* at 24-25 ("[Plaintiffs] [have] no apparent offices or personnel here.")) and therefore, their choice should be given less weight. (*See id.*) Plaintiffs argue that Texas, and specifically NDTX, has an interest in the litigation because one of the Google's data centers is physically located within the district. (Pls.' Unredacted Resp. at 22.)

NDCA has a stronger local interest in the case. Although, as an accused product is located within this district—supporting a finding that there is some local interest here—the NDCA's stronger connect is based on more than the items mere presence in the district, which is common to multiple other districts as well. First, the '704 Patent was developed in NDCA, as was much of the relevant prior art. (Google's Trsfr. Br. at 24.) Second, the Google employees who were involved in developing the accused products reside in NDCA. *See In re Apple Inc.*, 979 F.3d at 1345 (holding that NDCA had a local interest in part "because the lawsuit calls into question the work and reputation of several individuals residing in NDCA" (internal quotations omitted)). Similarly, much of the accused technology was developed by

NDCA residents in the NDCA. (*See* Google's Trsfr. Br. at 24.) Therefore, this factor favors transfer. *In re Apple Inc.*, 979 F.3d at 1345 ("[B]ecause the accused products were designed, developed, and tested in NDCA . . . , this factor weighs in favor of transfer.").

### iii.    The familiarity of the forum with the law that will govern the case.

The seventh factor considers the current district's "familiarity of the forum with the law that will govern the case." *Volkswagen II*, 545 F.3d at 315. This factor most "commonly applies where the destination venue is in a different State—in which case that State's familiarity with the applicable law would be especially probative to the transfer analysis." *Planned Parenthood*, 52 F.4th at 632 n.5. This means that we must look to the law the district court will be called on to apply, including whether the current district court "would be bound to [the transferee court's] law concerning such claims." *Def. Distrib.*, 30 F.4th at 436. This factor is neutral because, as the parties agree, both forums are familiar with patent law.

### iv.    The avoidance of unnecessary problems of conflicts of law.

The fourth public factor focuses on "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315. The Court finds this factor neutral as federal patent law governs the dispute, and therefore raises no conflict-of-law issues. Weighing the different factors, the Court finds that the public interest factors slightly favor transfer to NDCA.

In conclusion, balancing both the private interest factors and the public interest factors, Cour concludes that the analysis weighs in favor of transferring this case to NDCA.

**2.    The Northern District of California is a more convenient forum compared to the Western District of Texas.**

Having determined that NDCA is a more convenient forum compared to this district, the Court turns to Plaintiffs' contingent motion to transfer to WDTX. (Dkt. No. 286.) The Court again considers the previous factors, but this time, to determine whether the Western District of Texas ("WDTX") is the more convenient forum compared to NDCA.

Plaintiffs allege that "in the event the Court determines that transfer out of the Northern District of Texas is proper, the appropriate transferee forum is in the Austin Division of the Western District of Texas." (Pls.' Cont. Mot. at 3.) The Court disagrees.

**a.    Threshold Question.**

The threshold question of venue is met. "Google provides, sells, and offers for sale infringing products to users in that district and maintains two offices in Austin," (Pls.' Cont. Mot. at 3-4), therefore residing in WDTX. This case could have originally been brought in the Austin Division of WDTX.

**b.    Private Factors**

The first private factor, the relative ease of access to sources of proof, weighs slightly in favor of NDCA. Plaintiffs' contingent motion mainly reiterates the same

arguments as the original response, once again focusing on the access of digital data and the physical data centers.  As already explained above, despite most of the evidence being digital, the majority of custodians reside in NDCA.  Additionally, although Plaintiffs argue that transferring the case would eliminate the possibility of a jury viewing the data centers, it is still unclear how physically viewing a data center would help a jury understand the internal processes of the components.  The one difference between Plaintiffs' response to Google's motion to transfer and its contingent motion to transfer is that now the AMD custodians are in the requested district.  (*See* Pls.' Cont. Mot. at 5.)  Considering the relative amount of potential document custodians in NDCA and WDTX, the Court finds this factor still slightly favors NDCA.

The second private factor, availability of compulsory process to secure the presence of witnesses, is neutral.  Plaintiffs have not identified any additional witnesses than those who already have been analyzed above.  This factor remains neutral under the comparison between NDCA and WDTX.

The third private factor, cost of attendance for willing witnesses, still heavily weighs in favor of NDCA.  As with the second factor, the alleged potential witnesses remain the same.[3]  Because the bulk of the relevant witnesses reside in NDCA, this factor heavily weighs in favor of NDCA.

---

[3] The only difference for Plaintiffs' witnesses is that in this comparison Mr. Gannis is within the district and the Patent Platform Services employees are 200 miles away from the proposed venue, where the previous analysis had them flipped.

The fourth private factor, practical problems that make trial of a case easy, expeditious, and inexpensive, is neutral between NDCA and WDTX.

Balancing the private interest factors, the Court finds that the analysis favors NDCA.

### c.    Public Factors

The first public interest factor, the administrative difficulties flowing from court congestion, weighs slightly in favor of WDTX.  Plaintiffs allege that NDCA has a 36-month average and 33-month median time to trial.  (Pls.' Cont. Mot. at 7.) WDTX shows a 27-month median and 29-month average time to trial for the same data range.  Therefore, this factor slightly favors WDTX.  *See DDC Tech., LLC*, 2023 WL 2518846, at *7 ("Nevertheless, 'this factor alone should not outweigh other factors,' as it is the 'most speculative.'" (citing *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 871 (E.D. Tex. 2012))).

The second public factor, the local interest in having localized interests decided at home, slightly favors NDCA.  While many arguments remain the same as those already addressed above, WDTX has more of an interest in the resolution than NDTX, because as alleged by Plaintiffs, "processors relevant to infringement of at least the '809 Patent were designed and developed in the Western District of Texas." (*See* Pls.' Cont. Mot. at 8.)  Nonetheless, NDCA still maintains a strong local interest, as detailed above.  Due to WDTX's interest, though, the factor still favors NDCA, but only slightly.

The third and fourth public factors, familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflicts of law, are neutral between NDCA and WDTX.

Balancing all the factors, the Court finds that the public interest factors slightly favor NDCA. Accordingly, considering both the public and private interest factors, the analysis weighs in favor of NDCA.

## IV. CONCLUSION

Considering all the relevant factors and evidence provided by the parties, the Court:

(1)    **GRANTS** Google's Motion to Seal, (Dkt. No. 238);

(2)    **GRANTS** Plaintiffs' Motion to Seal (Dkt. No. 267);

(3)    **GRANTS** Google's motion (Dkt. No. 237) and **TRANSFERS** this case to the Northern District of California; and

(4)    **DENIES** Plaintiffs' Contingent Motion to Transfer to the Western District of Texas, Austin Division, (Dkt. No. 286).

Pursuant to N.D. Tex. L.R. 62.2, the order to transfer this action to the Northern District of California is **STAYED** for 21 days from the date this Memorandum Opinion and Order is entered to allow any party to file an objection to Judge Lindsay within 14 days after being served with a copy of this order. *See* Fed. R. Civ. P. 72(a). If an objection is filed, this order of transfer is stayed pending further order of the Court.

**SO ORDERED** on July 23, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE